UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY BRADLEY,

      Petitioner,                           Case No. 08-13560-BC

v.                                     Hon. Thomas L. Ludington

RAYMOND BOOKER,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Anthony Bradley, presently confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Wayne County Circuit Court of first-degree felony murder, Mich. Comp Laws § 750.316; and possession of a firearm in the commission of a felony, Mich. Comp Laws § 750.227b.[1] Petitioner was sentenced to life imprisonment without parole on the first-degree murder conviction and received a consecutive two year prison sentence on the felony-firearm conviction. Petitioner contends that there was insufficient evidence to convict him of first-degree felony murder, that the trial court erred in failing to declare a mistrial due to the fact that the terrorist attack of September 11, 2001 took place while Petitioner's second trial was in progress, that his Double Jeopardy rights were violated when the trial court judge declared a mistrial after the jury in Petitioner's first trial indicated that they were unable to reach a verdict, that his sentence was based on inaccurate information, that he was deprived of the effective assistance of trial and appellate

---

[1] Petitioner was also convicted of armed robbery, but this conviction was vacated at sentencing on Double Jeopardy grounds. (See Tr. 10/4/2001, pp. 7-8).

counsel, that he should be granted a new trial based upon the recantation of a witness's trial testimony, and that his custodial statements should have been suppressed after he invoked his right to counsel. The respondent has filed an answer to the petition, asserting that the claims are procedurally defaulted and/or lack merit. The Court agrees that Petitioner's claims are meritless, therefore the petition will be denied.

I.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> On July 12, 2000, shortly after midnight, defendant Bradley, along with codefendant Derico J. Thompson, stole marijuana from the thirty-year-old victim, who was shot and killed during the robbery. The victim's body was found on a porch near his home in Westland. The defendants were friends and co-workers. The defense maintained that, although a robbery and shooting occurred, defendant was merely present.
>
> . . .
>
> Here, the evidence shows that defendant was an active participant in the planning and execution of the robbery, and supplied the handgun used during the crime. Specifically, the evidence showed that defendant and the victim were friends, that defendant was aware that the victim possessed marijuana, and that, shortly before the incident, defendant asked a mutual friend of both defendant and the victim about robbing the victim. Defendant used his girlfriend's car to drive himself and codefendant Thompson to commit the crime. After the incident, defendant told his girlfriend that he and codefendant Thompson had robbed the victim of marijuana, and marijuana was observed in his girlfriend's car, which defendant unexpectedly had painted blue on the day after the incident. Defendant also commented to his girlfriend that he hoped the victim died, and that codefendant Thompson was having trouble moving the marijuana. Based on this evidence, the jury could reasonably infer that defendant was the source of information about the victim having marijuana, was the architect of the scheme to rob the victim, and was involved in executing the robbery.
>
> Furthermore, the evidence supported a reasonable inference that defendant supplied

-2-

the gun used during the robbery. The victim was shot with a nine-millimeter handgun. There was evidence that, when discussing robbing the victim with a mutual friend of both defendant and the victim, defendant was armed with a nine-millimeter handgun. Also, the owner of the house where defendant stayed with this girlfriend saw a nine-millimeter handgun in their room shortly before the shooting. Moreover, when talking to the police after the incident, defendant admitted that he owned a nine-millimeter handgun, but refused to disclose its location. Defendant also declared to the police that they would never find the murder weapon.

*People v. Bradley*, No. 240746, 2004 WL 201617, at * 1–2 (Mich.Ct.App. Feb. 3, 2004).

The Michigan Supreme Court denied Petitioner's application for leave to appeal, concluding that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Bradley*, 688 N.W.2d 828 (Mich. 2004) (table). The United States Supreme Court denied a petition for certiorari. *Bradley v. Michigan*, 544 U.S. 1002 (2005).

Petitioner subsequently filed a post-conviction motion for relief from judgment pursuant to Mich.Ct.R. 6.500, *et. seq.*, which was denied. *People v. Bradley*, No. 00-8732-01 (Wayne Cnty. Cir. Ct. Aug. 17, 2006). The Michigan Court of Appeals denied Petitioner leave to appeal. *People v. Bradley*, No. 279978 (Mich.Ct.App. March 24, 2008). Petitioner filed an application for leave to appeal with the Michigan Supreme Court. While his application was pending in that court, Petitioner filed a petition for writ of habeas corpus with this Court, which was held in abeyance pending the outcome of his case with the Michigan Supreme Court. On October 27, 2008, the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Bradley*, 769 N.W.2d 205 (Mich. 2008). This Court subsequently reinstated the petition for writ of habeas corpus to the Court's active docket. *Bradley v. Woods*, No. 08-13560-BC, 2009 WL 801741 (E.D. Mich. Mar. 24,

2009). [2]

Petitioner raises the following issues in his petition:

I. Whether petitioner was convicted on insufficient evidence of felony murder where no "Aaron malice" was shown in this ill-fated drug deal.

II. Petitioner's Fifth, Sixth, and Fourteenth Amendment constitutional right to a fair trial was violated by the trial court's failure to grant a mistrial, order a continuance or instruct the jury regarding the tragic events or September 11, 2001 that were unfolding during petitioner's trial.

III. Petitioner's second trial violated double jeopardy because there was no manifest necessity for a mistrial of his first trial.

IV. Petitioner was denied his Fourteenth Amendment right to due process and his sentence is invalid because he was sentence (sic) on inaccurate information of the jury's verdict, and petitioner was denied his Sixth Amendment right to counsel when trial counsel failed to object to the inaccurate verdict forms and during sentencing.

V. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to request a *Remmer* hearing to determine the jurors' state of mind concerning the events that took place on September 10, and September 11, 2001 during petitioner's trial. Also, counsel was ineffective for failing to object to the trial judge's comments and to the admission of a non-testifying co-defendant's statement which violated petitioner's Sixth Amendment right to confront witnesses.

VI. Petitioner's Fourteenth Amendment right to due process and a fair trial were violated where the prosecutor threatened, intimidated, and solicited false testimony from witness Quiana Mckay, committing prosecutorial misconduct.

VII. Petitioner's Fifth Amendment rights not to be a witness against his(sic) self were violated when the court admitted his custodial statements into evidence after he unambiguously invoked his right to counsel. The court committed clear error by denying petitioner's motion to suppress these custodial statements to police when the testimony shows that he unambiguously invoked his right to counsel.

II.

---

[2] On September 15, 2010, this Court amended the caption to reflect that Petitioner's current custodian is Raymond Booker.

Petitioner is not entitled to habeas corpus relief unless the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). And, under 28 U.S.C. § 2254(e)(1), a state court's factual determinations are presumed to be correct unless the habeas petitioner rebuts them with clear and convincing evidence.

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 326, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions, but unreasonably applies that principal to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, a habeas court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. To obtain habeas relief in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

III.

A.

Respondent contends that Petitioner's last four claims are procedurally defaulted because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by Mich.Ct.R. 6.508(D)(3), for failing to raise these claims in his appeal of right.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing

-6-

Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are "unexplained." *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

In the present case, the trial court rejected Petitioner's post-conviction claims on the merits without mentioning M.C.R. 6.508 (D)(3) or Petitioner's failure to raise these claims on his direct appeal. Because the last reasoned state court decision rejected Petitioner's claims on the merits, it is appropriate to conclude that Petitioner's last four claims are not procedurally defaulted. *Guilmette*, 624 F. 3d 289, 292. Moreover, Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claims, because state post-conviction review was the first opportunity that he had to raise an ineffective assistance of appellate counsel claim. *Id.* at 291.

B.

Petitioner has filed an amended motion to expand the record [Dkt. # 24] to include an affidavit signed by witness Quiana McKay, signed and dated November 30, 2009, in which Ms. McKay claims that she was forced by the police and the prosecutor to testify falsely at Petitioner's trial. This affidavit seeks to supplement the original affidavit signed by Ms. McKay on April 26, 2003, in which she had earlier sought to recant her trial testimony.

Rule 7 (a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, indicates that if a habeas petition is not summarily dismissed, the district court judge "may direct the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." A federal district court judge may employ a variety of measures to avoid the necessity of an evidentiary hearing in a habeas case, including the direction to expand the record to

include evidentiary materials that may resolve the factual dispute without the need for an evidentiary hearing. *See Blackledge v. Allison*, 431 U.S. 63, 81-82 (1977). The decision whether to expand a habeas record is within the sound discretion of the district court. *See West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008).

Petitioner requests the Court to expand the record to include an affidavit which he contends would give support to his sixth claim involving the alleged use of perjured testimony by the prosecutor. Because the affidavit may help resolve any factual disputes in this case, the Court will permit the court record to be expanded to include this affidavit.

## C.

Petitioner first contends that there was insufficient evidence of malice to convict him of first-degree felony murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993)).

Therefore, even if a federal habeas court might have not voted to convict a defendant had it participated in the jury deliberations, it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution. Secondly, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F. 3d at 205; *See also Tucker v. Palmer*, 541 F. 3d 652, 666 (6th Cir. 2008).

> Under Michigan law, the elements of first-degree felony murder are:
>
> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court has indicated that "a jury can properly infer malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *See also Carines*, 460 Mich. at 759 (internal citation omitted). "Malice may also be inferred from the use of a deadly weapon." *Carines*, 460 Mich. at 759.

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (citing Mich. Comp Laws § 750.529; *People v. Allen*, 505 N.W. 2d 869 (1993)).

The prosecutor advanced alternative theories that Petitioner was either the principal or an aider and abettor to the robbery and the murder.  To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *Carines*, 460 Mich. at 757-58).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Petitioner possessed the requisite malice required to support his conviction for first-degree felony murder as an aider and abettor.  The evidence established that Petitioner planned and actively participated in an armed robbery while knowing that a firearm would be used.  Some of the evidence, in fact, suggested that Petitioner supplied the firearm that was used during the robbery.

A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur.  Thus, a defendant who participate in an armed robbery acted with malice, so as to support a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer*, 337 F. 3d 706, 719-20 (6th Cir. 2003) (concluding that intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."); *see also People v. Carines*, 460 at 759-60; *Harris v. Stovall*, 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); *People v. Hart*, 411 N.W.2d 803 (Mich. Ct. App. 1987); *Meade v. Lavigne*, 265 F. Supp. 2d 849, 858-59 (E.D. Mich. 2003); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003) (petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that

-10-

he was actually innocent of felony-murder, finding that petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and wilful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).

Petitioner argues that even if this killing took place during a robbery, there was no malice because the shooting happened when the victim rushed the gunman and died when the gun went off during the struggle. This argument is without merit. When Petitioner participated in an armed robbery, "he took the risk that [the victim] might exercise [his] natural right of self-preservation." *People v. Anderson*, 383 N.W.2d 186, 187 (Mich. Ct. App. 1985).

Finally, to the extent that Petitioner challenges the Michigan Supreme Court's decision in *People v. Carines*, addressing malice under Michigan law, Petitioner would not be entitled to habeas relief. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002). Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine*, 80 F. App'x 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998). Petitioner is not entitled to habeas relief on his first claim.

### D.

Petitioner next alleges that the trial court judge violated his rights to due process and to a fair trial when she denied his motion for a mistrial following the terrorist attacks of September 11, 2001, which took place during his trial. Petitioner contends that the potential prejudice of this event on

-11-

the jurors was exacerbated by a bomb threat which had taken place at the courthouse on September

10, 2011, which had lead to the evacuation of the courthouse.

The Michigan Court of Appeals rejected Petitioner's claim, because he failed to provide any

evidence that the events of September 11 affected the jury's verdict, so as to deny him a fair trial.

*Bradley*, Slip. Op. at *3.

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a

showing of manifest necessity. *Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v.*

*Sowders*, 34 F3d 352, 354-55 (6th Cir. 1994).

Petitioner contends that the Sixth Circuit's decision in *Walls v. Konteh* supports his claim

that the trial court judge should have declared a mistrial when the terrorist attacks of September 11th

took place during his trial. 490 F.3d 432. Petitioner's reliance on *Walls* is misplaced. In *Walls*, the

petitioner claimed that his rights under the Double Jeopardy Clause were violated when he was

retried on criminal charges after the state trial court sua sponte declared a mistrial at his first trial,

over the petitioner's objection, based on the fact that the terrorist attacks of September 11, 2001 had

occurred on the second day of the petitioner's first trial. *Walls*, 490 F. 3d at 434-35. A majority of

the court in *Walls* concluded that the petitioner's Double Jeopardy rights were not violated, because

the trial court judge's declaration of a mistrial was based on manifest necessity due to the terrorist

attacks of September 11, 2001. *Id.* at 438-39. However, although the majority of the Sixth Circuit

in *Walls* ruled that the state trial court judge did not abuse his discretion in declaring a mistrial due

to the events of September 11th, nowhere in their opinion did the majority hold that the trial judge

was required to do so. Additionally, the majority in *Walls* acknowledged that unlike other

extraneous influences on jurors, "the perceived improper taint [of the terrorist attacks] came from

-12-

outside the courthouse." *Walls*, 490 F. 3d at 438.  The majority further acknowledged that another judge in the same courthouse allowed an on-going trial to proceed after the terrorist attacks had taken place.  *Id.* at 439.

More importantly, Judge Gilman's dissent in *Walls* undercuts any claim by Petitioner that the trial court was required to declare a mistrial in the aftermath of the September 11th terrorist attacks:

> Certainly, the trial judge's instincts to safeguard Walls's presumptive innocence are laudable.  But attempting to understand how the attacks of September 11 would have prejudiced the jury against Walls strains the imagination.  The two have nothing in common.  Hijacking jetliners for use as guided missiles versus robbing a residence at gunpoint, although both violent criminal acts, are otherwise incomparable.  The September 11 terrorists sought the death of American lives and the destruction of recognizable symbols of American power.  Walls's alleged actions sought only money.  The terrorists' attacks killed approximately 3,000 people. Walls's alleged actions resulted in no deaths at all.  Finally, regarding more tangible indices such as physical appearance that typically account for "spillover effect," those responsible for the September 11 attacks were of Middle Eastern origin and Islamic beliefs.  Nothing in the record indicates that Lawrence Walls was of either.

> *Walls*, 490 F. 3d at 443 (Gilman, J., dissenting).

Judge Gilman went on to state that "[T]he likelihood that the attacks would have prejudiced the jury against [Petitioner] was therefore... 'minuscule or nonexistent.' "  *Id.*

Indeed, a number of federal and state courts have concluded that a defendant in a criminal case was not entitled to a mistrial simply because the terrorist attacks of September 11, 2001 took place during the middle of the defendant's trial.  *United States v. Templeton*, 378 F. 3d 845, 847 n.2 (8th Cir. 2004) (noting in passing that the federal district court had denied a motion for a mistrial that was brought after the September 11th terrorist attacks occurred on the second day of trial); *United States v. Capelton,* 350 F. 3d 231, 236-37 (1st Cir. 2003) ( district court did not err in denying defendants' request for mistrial in the aftermath of September 11th terrorist attack and

-13-

bomb threat on courthouse in the absence of particularized allegations of prejudice from the defendants); *United States v. Merlino*, 204 F. Supp. 2d 83, 89-90 (D. Mass. 2002); *aff'd in part and rev'd in part on other grds* 592 F.3d 22 (1st Cir. 2010); *cert. den.* 131 S.Ct. 283 (2010) (defendants were not deprived of fair trial by holding their trial in wake of September 11 terrorist attack on World Trade Center, where defendants were charged with "common garden-variety crimes" rather than terrorism and court queried prospective jurors and excused those who had qualms about sitting in federal building in aftermath of attack); *Harris v. State*, 84 P. 3d 731, 739-40 (Okla. Crim. App. 2004) (defendant charged with first-degree murder and subject to death penalty was not entitled to mistrial based on fact that his trial was conducted during week of terrorist attacks of September 11, 2001, which created national emergency; defendant's offenses bore no resemblance to terrorist attacks, and jurors expressed no concern that their ability to fairly and fully evaluate the evidence would be affected by unfolding national events).

In the present case, fairminded jurists would agree that the trial court judge did not violate Petitioner's right to a fair trial by refusing to declare a mistrial after the September 11th terrorist attacks occurred in the middle of Petitioner's trial.  Petitioner was not of Middle Eastern descent and the charges against him did not involve terrorist activities.  Instead, Petitioner was charged with "common garden-variety crimes" which had no relation to the tragic terrorist attacks on our country on September 11, 2001.  Attempting to understand how the terrorist attacks of September 11, 2001 prejudiced Petitioner's jury against him "strains the imagination."  *Walls*, 490 F. 3d at 443 (Gilman, J., dissenting).  Moreover, even if some judges might have declared a mistrial in this case, in light of Judge Gilman's dissent and the other cases cited, Petitioner has not demonstrated that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with"

-14-

Supreme Court precedent.  *Harrington*, 131 S. Ct. at 786.  Petitioner is not entitled to habeas relief on his second claim.

E.

Petitioner next claims that the trial court judge erred in declaring a mistrial at Petitioner's first trial held in May of 2001, therefore, his second trial and conviction violated the Double Jeopardy Clause.

In rejecting Petitioner's claim, the Michigan Court of Appeals first recited the facts, which are presumed correct on habeas review:

> On May 16, 2001, at 10:11 a.m., the jury began deliberations in defendant's first trial.  They were excused for lunch at 1:10 p.m., and resumed deliberations at 2:10 p.m.  At 4:10 p.m., the jurors were dismissed for the day.  On May 17, at 9:03 a.m., the jury resumed deliberations.  At 10:39 a.m., the jury sent a note indicating that they were "hung."  Over defense counsel's objection, the court read the "deadlocked jury" instruction, CJI2d 3.12, and ordered the jury to continue deliberations.  After the jury was excused, defense counsel expressed concern that the trial court was forcing the jurors to continue to deliberate, which may coerce them into reaching a verdict.  The jury deliberated from 10:45 a.m. until 12:33 p.m., at which time they were excused for lunch.  The jury resumed at 1:45 p.m., and, at 3:36 p.m., again sent out a note indicating that they "can't reach a verdict."  The court noted that the message represented the second time the jury had indicated that it was deadlocked and, if upon inquiry, the jurors indicated that further deliberations would be helpful, it would possibly let them continue.  At 3:40 a.m. , the following exchange occurred:
>
> > [Trial court]: At about 3:36 you sent out this note. It says: "We can't reach a verdict."
> >
> > To the foreperson, has there been any change since you sent out this similar note earlier today?
> >
> > [Foreperson]: Yes, but it's still split. We can't reach a unanimous verdict.
> >
> > [Trial court]: Is it still split the same way it was before, is what I'm asking you.
> >
> > [Foreperson]: From the first note that we sent you?

-15-

[Trial court]: Yes.

[Foreperson]: No.

[Trial court]: Okay.  Now, *is it possible that further deliberations would assist you in arriving at a verdict?*

[Foreperson]: *No.*

[Trial court]: All right, Manifest necessity, I'm going to have to declare a mistrial.  We'll rise and have our jurors step in the jury room.

*Bradley*, 2004 WL 201617, at * 3-4.

The Michigan Court of Appeals concluded that the trial court judge did not abuse her discretion by declaring a mistrial on the basis of manifest necessity, namely, a deadlocked jury:

> Here, the jury was discharged approximately ten hours after it began deliberations. There were two communications from the jury that said they were unable to reach a verdict.  The first note was sent after approximately six hours of deliberations. After the first note, the court gave the deadlocked jury instruction, CJI2d 3.12, and asked the jurors to further deliberate.  Subsequently, after an additional four hours of deliberations, the jury again said they could not reach a verdict.  Indeed, the foreperson advised the trial judge that the jury was not going to reach a verdict, and that further deliberations would be fruitless.

*Id.* at * 6.

At the outset, the question before this Court on habeas review of Petitioner's state court conviction

> is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the [Michigan Court of Appeals] that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law.

*Renico v. Lett*, 130 S.Ct. at 1862.

When a judge discharges a jury on the grounds that the jury is unable to reach a verdict, the

-16-

Double Jeopardy Clause does not prohibit a new trial for the defendant before a new jury. *Renico*,

130 S. Ct. at 1862-63(citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824)). "Unlike

the situation in which the trial has ended in an acquittal or conviction," the Double Jeopardy Clause

does not automatically bar the retrial of a defendant when a criminal trial is terminated without a

final resolution of the charges against the accused, provided that there is a "manifest necessity" for

declaring a mistrial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). The concept of "manifest

necessity" was first enunciated by Justice Story in *Perez*:

> We think, that in all cases of this nature, the law has invested Courts of justice with
> the authority to discharge a jury from giving any verdict, whenever, in their opinion,
> taking all the circumstances into consideration, there is a manifest necessity for the
> act, or the ends of public justice would otherwise be defeated. They are to exercise
> a sound discretion on the subject; and it is impossible to define all the circumstances,
> which would render it proper to interfere. To be sure, the power ought to be used
> with the greatest caution, under urgent circumstances, and for very plain and obvious
> causes . . . . But, after all, they have the right to order the discharge; and the security
> which the public have for the faithful, sound, and conscientious exercise of this
> discretion, rests, in this, as in other cases, upon the responsibility of the Judges,
> under their oaths of office.

*Perez*, 22 U.S. (9 Wheat.) at 580.

A trial judge's belief that a jury is "genuinely deadlocked" has "long [been] considered the

classic basis for a proper mistrial." *Washington*, 434 U.S. at 509; *see also Downum v. United States*,

372 U.S. 734, 736 (1963) (deadlocked jury is the "classic example" of when the State may try the

same defendant twice). Moreover, a trial judge should be "accorded great deference by a reviewing

court" in deciding whether a jury is deadlocked. *Washington*, 434 U.S. at 510. The Supreme Court

has "expressly declined to require the 'mechanical application' of any 'rigid formula' when trial

judges decide whether jury deadlock warrants a mistrial." *Renico*, 130 S. Ct. at 1863. The Supreme

Court, in fact, has "never required a trial judge, before declaring a mistrial based on jury deadlock,

to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse." *Id.* at 1864. Most significantly, the Supreme Court has never "overturned a trial court's declaration of a mistrial after a jury was unable to reach a verdict on the ground that the 'manifest necessity' standard had not been met." *Id.* (quoting *Winston v. Moore*, 452 U.S. 944, 947 (1981) (Rehnquist, J. dissenting).

In *Renico v. Lett*, the Supreme Court held that the Michigan Supreme Court's affirmance of the state trial court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached." *Id.* at 1864-65.

In the present case, the Michigan Court of Appeals' rejection of Petitioner's Double Jeopardy claim was not an unreasonable application of clearly established federal law. The jury deliberated for over ten hours over the course of two days. When the jurors first indicated that they were deadlocked, the judge, over the objections of Petitioner's defense counsel, refused to declare a hung jury and brought the jurors back into the courtroom. The jurors were then given a deadlocked jury instruction and directed to continue to deliberate. After an additional four hours, the jurors indicated that they could not reach a verdict. In response to the trial judge's question, the jury foreperson indicated that the jury would be unable to reach a verdict after further deliberations. The fact that the jury foreperson indicated that the jurors would be unable to reach a verdict supports the judge's decision to declare a mistrial. *Renico*, 130 S. Ct. at 1865. Even if the trial judge might have taken

-18-

additional steps before declaring a mistrial, none were required, either under the Supreme Court's double jeopardy precedents or, by extension, the AEDPA. *Id.* at 1866. Petitioner is not entitled to habeas relief on his third claim.

F.

Petitioner next contends that he was sentenced on the basis of inaccurate sentencing information. Specifically, Petitioner contends that the judge did not have the authority to sentence him for first-degree felony murder because the jury verdict form did not identify the crime of first-degree felony murder.

In the present case, Petitioner was charged with first-degree felony murder. He was not charged with premeditated murder as an alternative theory. (Tr. 9/14/2001, pp. 96-97).

Mich.Comp. Laws § 750.316 defines first-degree murder as either a deliberate and premeditated killing or a killing which is committed in the perpetration, or attempt to perpetrate certain enumerated felonies, in this case, armed robbery. The penalty for first-degree murder is mandatory life imprisonment without parole. Any charge of first-degree murder implicitly includes a charge of felony-murder. *See, e.g.*, *People v. Anderson*, 233 N.W. 2d 620 (Mich. Ct. App. 1975).

A general jury verdict form is valid so long as it is legally supportable on one of the submitted grounds, even though that gives no assurance that a valid ground, rather than invalid one, is the basis for the jury's decision. *Griffin v. U.S.*, 502 U.S. 46, 49 (1991).

In *Schad v. Arizona*, 501 U.S. 624, 631, 645 (1991), the U.S. Supreme Court held that the Constitution does not require separate verdict forms in cases submitted to a jury on alternative theories of premeditated murder and felony murder, even though separate verdict forms might be useful in such a circumstance. Therefore, a general verdict in a first degree murder case where

-19-

allegedly inconsistent theories of first degree murder have been presented does not render the jury's verdict infirm. *Id.*

In the present case, Petitioner was charged only with first-degree felony murder and not with premeditated murder as an alternative theory. Thus, there was no reason for the verdict form to explain that Petitioner was being charged with first-degree murder under a felony murder theory. Moreover, because felony murder is one of grounds for charging a defendant under Michigan law with first-degree murder, Petitioner's conviction for first-degree murder was valid. Accordingly, the trial judge had the authority to sentence Petitioner to life imprisonment without parole. Finally, because Petitioner has not demonstrated that the sentencing judge based his sentence on inaccurate information, his related ineffective assistance of counsel claim is without merit. *See Johnson v. Smith*, 219 F. Supp.2d 871, 883 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his fourth claim.

### G.

Petitioner next contends that he was deprived of the effective assistance of trial counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that

-20-

such performance prejudiced his defense.  *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'"  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."  *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles*, 129 S. Ct. at 1420 (citing *Yarborough*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner.  *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland*'s high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

-21-

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" almost ten years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first contends that defense counsel was ineffective because he did not move for a "*Remmer* hearing" to determine the effect that the bomb threat of September 10th and the terrorist attacks of September 11th had upon the minds of the jurors.

In *Remmer v. United States*, 347 U.S. 227, 229 (1954), the Supreme Court held that that any "private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is considered to be "presumptively prejudicial." Therefore, a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at p. 229-30. *Remmer* placed the burden on the prosecution to rebut the presumption that an extrinsic influence upon the jury prejudiced the defense. However, in *Smith v. Phillips*, 455 U.S. 209 (1982), the Supreme Court subsequently stated,"[t]his Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215. In the aftermath of *Smith v. Phillips*, the Sixth Circuit

-22-

"has consistently held that *Smith v. Phillips* reinterpreted *Remmer* to shift the burden of showing bias to the defendant rather than placing a heavy burden on the government to show that an unauthorized contact was harmless." *United States v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993) (collecting cases).

It is unclear whether Petitioner would have been entitled to a *Remmer* hearing. Petitioner does not allege that any person communicated or contacted any of the jurors to discuss Petitioner's case with them. Under the circumstances, it not clear that the decision in *Remmer* applies to this case at all. *See, e.g.*, *Bullock v. U.S.*, 265 F. 2d 683, 696 (6th Cir. 1959) (concluding that it is "questionable whether the rule of the *Remmer* case" was applicable to a public television broadcast about the defendant's case which was not intended for the jurors to see, and noting that "the *Remmer* case presented a situation of proven tampering by private parties"). Moreover, a *Remmer* hearing is not required when the information is unrelated to any issue in the jury's deliberations. *See Wolfe v. Johnson*, 565 F.3d 140, 162 (4th Cir. 2009) (state court's conclusion that habeas petitioner, who was convicted of capital murder, failed to show prejudicial influence on jury's deliberations based on jury foreman's introduction of enlarged picture of his teenage son was not contrary to or an unreasonable application of federal law, as required for habeas relief; court could reasonably conclude that photograph was unrelated to any issue in jury deliberations, and that it was not a problematic influence, such as private communication, contact, or tampering with a juror). Finally, a *Remmer* hearing is required to be conducted "only when there is a colorable claim of extraneous information that 'presents a likelihood of affecting the verdict.' " *United States v. Gonzales*, 227 F.3d 520, 527 (6th Cir.2000) (quoting *United States v. Frost*, 125 F.3d 346, 377 (6th Cir.1997)).

In the present case, Petitioner has not provided any evidence to show that the bomb threat of September 10th or the terrorist attacks of September 11th had any prejudicial effect on the jury's

decision in this case. The two events were unrelated to Petitioner's criminal charges, nor did these incidents involve "the type of problematic influence-private communication, contact, or tampering . . . with a juror" that was identified by the Supreme Court in *Remmer*. *Wolfe*, 565 F. 3d at 162. Petitioner's bare assertion that the jurors were tainted by the bomb threat and the terrorist sattacks of September 11th is insufficient to establish that he was entitled to a *Remmer* hearing. *See Kowalak v. Scutt*, 712 F. Supp. 2d 657, 693 (E.D. Mich. 2010). Because Petitioner has not demonstrated that he was entitled to a *Remmer* hearing, Petitioner is unable to show that counsel was ineffective for failing to move for one. *Id.* at 702-03.

Petitioner next claims that his defense counsel was ineffective for failing to object to remarks made by the trial court judge during her instructions to the jury, in which she asked everyone to take a "moment of silence" for the victims of the September 11th, 2001 terrorist attacks. (Tr. 9/14/2001, p. 105). At sentencing, Petitioner personally argued to the judge that her invocation of a moment of silence was highly prejudicial. The judge rejected Petitioner's argument, noting that the President of the United States had asked everyone to observe a moment of silence for the September 11th victims that day. (Tr. 10/4/2001, pp. 31-33).

Petitioner is unable to show that he was prejudiced by counsel's failure to object to the judge's call for a moment of silence, in light of the fact that she rejected the same objection from Petitioner. Under such circumstances, Petitioner has not demonstrated that the judge's request for a moment of silence in memory of the victims of the September 11, 2001 terrorist attacks substantially prejudiced him. *See McNamara v. Hittner*, 2 A.D.3d 417, 418-19 (N.Y.A.D. 2d Dept. 2003); *See also Messick v. State*, 580 S.E.2d 213 (Ga. 2003) (concluding no error or harm was attributable to recitation of pledge of allegiance following moment of silence in memory of victims

-24-

of September 11, 2001, in prosecution for malice murder and cruelty to children). Petitioner has not demonstrated that the trial judge's remarks were so prejudicial that counsel's failure to object deprived him of a fair trial.

Petitioner next contends that his trial counsel was ineffective for failing to object to the admission of extrajudicial remarks made by Petitioner's co-defendant, Derico Thompson, to Anthony Carr while Thompson and Carr were in jail. Thompson asked Carr to call Thompson's girlfriend and tell her to tell investigators that she did not buy him the watch that was recovered from the crime scene.

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-28 (1968). This rule has been extended even to cases in which the defendant's own interlocking confession was admitted against him at trial. *Cruz v. New York*, 481 U.S. 186, 193 (1987). However, a defendant's own confession may be considered on review of a conviction in assessing whether any Confrontation Clause violation was harmless error. *Id.* at 193-94; *See also Harrington v. California*, 395 U.S. 250 (1969).

In determining whether a *Bruton* violation is harmless, a reviewing court must decide "whether the 'minds of an average jury' " would have found the State's case against a defendant "significantly less persuasive" had the incriminating portion of the co-defendant's statement been excluded. *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001) (citing *Hodges v. Rose*, 570 F.2d 643 (6th Cir. 1978) (quoting *Schneble v. Florida*, 405 U.S. 427, 432 (1972)). "An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the

-25-

defendant claiming a *Bruton* violation confessed to full participation in the crimes." *Stanford*, 266 F.3d at 456.

In the present case, Petitioner told Keith Jones prior to the robbery that he was thinking of robbing the victim and asked Jones to participate in the robbery. During one of his conversations with Jones, Petitioner displayed a nine millimeter firearm to Jones, which was the type of weapon used in the murder. After the murder, Petitioner told Anthony Carr and his girlfriend, Quiana McKay, that he had participated in the robbery of the victim, in which the victim was shot. After the robbery, Petitioner painted his girlfriend's car a different color, from which a jury could infer that Petitioner was attempting to conceal his involvement in this crime. In light of this evidence against Petitioner, the admission of Thompson's out-of-court statement to Carr, even if it was a violation of *Bruton*, was harmless error, therefore, defense counsel's failure to object to this statement was not ineffective assistance of counsel. *See Rodriguez v. Jones*, 625 F. Supp. 2d 552, 564 (E.D. Mich. 2009). Petitioner is not entitled to habeas relief on his fifth claim.

H.

Petitioner next contends that he is entitled to a new trial based on the allegedly recanting affidavits of Quiana McKay, in which she allegedly rescinds her earlier testimony and claims that she was forced to testify falsely against Petitioner by the prosecutor and the police.

Recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991); *see also Byrd v. Collins*, 209 F. 3d 486, 508 n.16 (6th Cir. 2000). Furthermore, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup v. Delo*, 513 U.S. 298, 332 (1995).

-26-

Ms. McKay did not sign her original affidavit recanting her earlier statement until April 26, 2003, which was almost two years after Petitioner was convicted of this crime. The affidavit does not offer any convincing explanation as to why Ms. McKay waited almost two years to recant her trial testimony. *See Lewis v. Smith*, 100 F. App'x 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness's recanting affidavit made two years after petitioner's trial); *see also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (long-delayed affidavit of accomplice recanting statement to police did not establish the petitioner's actual innocence where it was made almost two years after the trial).

Moreover, McKay's recantation is suspect in light of the fact that her trial testimony that Petitioner admitted his involvement in the robbery was consistent with other evidence and testimony presented in the case, while her recantation was inconsistent with such evidence. *See, e.g.*, *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir.2005) (uncorroborated recantation is "even more unreliable" where trial testimony was consistent with other evidence and recantation was not).

Finally, McKay was Petitioner's girlfriend. As such, any recantation by her was particularly suspect. *See, e.g.*, *U.S. v. Coker*, 23 F. App'x 411, 412 (6th Cir. 2001) (the skepticism with which a court examines such an affidavit is only heightened when the recanting witness is a family member and the witness may have feelings of guilt).

Finally, McKay admitted at Petitioner's trial that she was afraid of being killed if Petitioner was convicted. (Tr. Excerpt, 9/6/2001, pp. 55-56). In light of the fact that McKay's recantation could very well have been inspired by her fear of retaliation, the trial court did not err in declining to grant post-conviction relief on this claim. "[R]easonable jurors no doubt could question the credibility of this about face from [McKay] and rationally could discount [her] testimony as nothing

-27-

more than an attempt to keep from being 'pegged as a rat' for having originally identified" Petitioner as being involved with this crime. *See McCray v. Vasbinder*, 498 F.3d 568, 574 (6th Cir. 2007). Petitioner is not entitled to relief on his sixth claim.

I.

Petitioner next challenges the trial court's refusal to suppress his statements to the police. He contends that he had invoked his right to counsel prior to those statements being made.[3]

An evidentiary hearing was conducted on Petitioner's motion to suppress on May 2, 2001. At the hearing, testimony indicated that Petitioner was arrested on July 14, 2000, at about 5:40 p.m. At that time, his *Miranda* rights were read to him. Petitioner made a verbal statement to the police, which did not implicate him in the crime. (Tr. 5/2/2001, pp. 11-17). Petitioner was then taken to the hospital, when it was revealed that he had a gunshot wound. (*Id.* at p. 33).

Officer Steven Bachard transported Petitioner to the hospital. Officer Bachard testified that Petitioner told him that because of his past dealings with the police, the detectives were going to try and pin the shooting on him. Officer Bachard assured Petitioner that as long as he was truthful, this would not happen. Officer Bachard then asked Petitioner why he was being so evasive with the detectives, to which Petitioner replied "that he was thinking about talking to his lawyer before telling them what happened at the scene." (*Id.* at pp. 50, 55-56).

Sergeant Michael Terry later spoke with Petitioner that night at the hospital. Petitioner and Sergeant Terry were talking about Petitioner's case. Sergeant Terry advised Petitioner that he should be "straight" or truthful with the detectives, at which point, Petitioner stated "I think I want

---

[3]   Because some of the pages in the argument section for this claim in Petitioner's brief in support of the petition for writ of habeas corpus were barely legible, this Court also reviewed Petitioner's delayed application for leave to appeal, in which he raised this claim before the Michigan Court of Appeals in his post-conviction appeal. [See Delayed Application for Leave to Appeal, pp. 27-40; Part of this Court's Dkt. # 12-21].

to talk to an attorney first."  No further discussion of the case took place between Sergeant Terry and

Petitioner.  (*Id.* at pp. 57-61).

Petitioner was questioned the following day by Sergeant Kevin Smith and was later

interviewed on July 16, 2000 by Lieutenant Gary Sikorski, the officer in charge of the case.  (*Id.* at

pp. 65-71; 84-89).  Petitioner contends that his statements to these two officers should have been

suppressed, because he had earlier invoked his right to counsel with Sergeant Terry.  The trial court

judge rejected the motion to suppress the statements, ruling that Petitioner had never actually

requested to speak with an attorney. (*Id.* at pp. 165-66).

It is true that once an accused invokes his right to counsel during custodial interrogation, that

interrogation must cease until counsel is made available, unless the accused initiates further

conversation with the police.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  However, the

"[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can

reasonably be construed to be an expression of a desire for the assistance of an attorney.' "  *Davis*

*v. United States*, 512 U.S. 452, 459 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)).

The suspect's statement "must unambiguously request counsel."  *Id.* at 459.  Additionally, "[u]nless

the suspect actually requests an attorney, questioning may continue."  *Id.* at 462.

In the present case, the trial court judge did not unreasonably apply clearly established

federal law by finding that Petitioner did not actually invoke his right to counsel, because fairminded

jurists could conclude that Petitioner's statement that "I think I want to speak to an attorney first"

was not an unambiguous request to speak with counsel.  Indeed, in *Davis,* the Supreme Court

concluded that the defendant's statement "Maybe I should talk to a lawyer" was not an unequivocal

request for counsel.  *Davis,* 512 U.S. at 462.  Other cases have found similar language to be too

equivocal to amount to an unambiguous request to speak to counsel, so as to require the police to cease their interrogation. *See Cornelison v. Motley*, 395 F. App'x 268, 274 (6th Cir. 2010) (concluding that habeas petitioner's comment "What if I want my lawyer present first?" was too ambiguous to require the police to terminate their interrogation); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (noting that defendant's statement during police interrogation that "it would be nice" to have an attorney was too ambiguously worded to require police to stop questioning defendant); *United States v. Mullikin*, 534 F. Supp. 2d 734 (E.D. Ky. 2006) (defendant's equivocal and ambiguous statement to arresting officer that "I think I might need a lawyer" did not invoke right to counsel); *but see Abela v. Martin,* 380 F.3d 915, 926 (6th Cir.2004) (statement "maybe I should talk to an attorney by the name of William Evans" was an unequivocal request for counsel where the suspect specifically named his attorney and gave the police officer the attorney's business card).

In light of these cases, Petitioner has not demonstrated that the trial court judge's conclusion that Petitioner did not actually invoke his right to counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Moreover, Petitioner has not explained how he was prejudiced by the admission of his statements to Detective Smith and to Lieutenant Sikorski, because Petitioner never actually confessed to murdering the victim or even intending to participate in the robbery. (Tr. 9/10/2001, pp. 9-13, 17; Tr. 9/12/2001, pp. 176-77). By contrast, Petitioner had spoken about robbing the victim to Keith Jones and had confessed his involvement in the robbery to Anthony Carr and Quiana McKay. For purposes of determining whether federal habeas relief must be granted to a state

-30-

prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Even if Petitioner was interrogated in violation of *Edwards v. Arizona*, the admission of his statements to Detective Smith and to Lieutenant Sikorski did not have a substantial and injurious influence or effect on his jury, in light of the far more incriminating evidence that was introduced against Petitioner at his trial. *See Kyger v. Carlton*, 146 F.3d 374, 382-83 (6th Cir. 1998). Petitioner is not entitled to habeas relief on his seventh claim.

## J.

Petitioner finally argues that appellate counsel was ineffective for failing to raise Petitioner's post-conviction claims on his appeal of right.

This Court has already concluded that Petitioner's fourth through seventh claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner has not demonstrated that appellate counsel was ineffective for failing to raise these claims on his appeal of right. Additionally, Petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise his fourth through seventh claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F.2d 264, 265-67 (6th Cir. 1983); See also *Bair v. Phillips*, 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000). The state courts' rulings on Petitioner's motion for post-conviction relief provided petitioner an adequate alternate to direct appellate review

and therefore his attorney's failure to raise these additional claims on Petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)). There is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided on more than one occasion. *Gardner*, 817 F. 2d at 189.

IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, Petitioner has not made a substantial showing that he has been denied a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

V.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. # 1] is

**DENIED**.

It is further **ORDERED** that the amended motion to expand the record [Dkt. # 24] is

**GRANTED.**

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED.**

                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

Dated: March 25, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney of record herein by electronic means and on
Anthony Bradley, #233422 at Ryan Correctional Facility, 17600 Ryan
Road, Detroit, MI 48212 by first class U.S. mail on March 25, 2011.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS